FREDERICK A. PETERSON *v.* THE MAYOR, ALDERMEN AND
COMMONALTY OF THE CITY OF NEW YORK.

Whether, under the amended charter of 1849, an employment, without any
preliminary advertisement for proposals, could be made by the Common
Council of the city of New York, to prepare plans for the erection of a
market ? *Quere.*

If the Common Council had such power, it could have been exercised only by
a resolution passed by both branches thereof, and the contract could have
been executed only through an appropriate head of department.

Accordingly, *held,* that an employment to draw such plans, by the standing
committee on markets, attached to one board, was not binding as the act of
either the corporation or the authorized agents thereof.

A subsequent adoption of the plans by both boards, and a resolution passed
thereby, directing the building of the market in accordance therewith, would
not operate as a ratification of such employment, for the reasons, first, that
the employment was illegal, and secondly, that there was no evidence that
the Common Council acted with knowledge of the facts attending such em-
ployment, or the terms thereof.

THIS action was instituted by an architect, to recover
$9,387 50 for plans and specifications prepared by him for
the erection of a market in the city of New York, under the
circumstances mentioned in the opinion.

The case came up from the trial term for the review of a
judgment of nonsuit, directed by the presiding judge.

*Robert D. Holmes* and *John Graham,* for the plaintiff,
cited 2 Kent's Com. 291, 292 ; *Mayor, &c., of Stafford* v.
*Till,* 4 Bing. 75 ; *Beverly* v. *Linc. Gas Light Co.,* 8 Coke, 60 ;
Ad. & Ell. 529 ; *Fister* v. *La Rue,* 15 Barb. S. C. R. 323.

*Abm. R. Lawrence, Jr.,* and *Robert J. Dillon,* (counsel to the
corporation,) for the defendants, cited *Christopher* v. *Corlies,*
13 Barb. 567 ; *Penn. Co.* v. *Dandriga,* 3 Gill. & John. 248 ;
Angell & Ames on Corp., §§ 111, 112, 304, and cases in notes.

BY THE COURT. INGRAHAM, FIRST J.—The plaintiff seeks
to recover from the defendants for certain plans and specifi-

cations, prepared by him for the rebuilding of the Washing
ton market.

The complaint was, that such plans were prepared by the
plaintiff in pursuance of the orders of the defendants, and
when completed were accepted and adopted by the defend-
ants as the plans, &c., by which the market should be
erected.

The answer denies any employment of the plaintiff by the
defendants, or any authority or order to prepare such plans;
and insists that the committee have no right or authority to
bind the defendants.

Upon the trial of the cause it appeared that the plans, &c.,
were prepared by the plaintiff under the direction of mem-
bers of a committee of the board of aldermen, appointed in
pursuance of a resolution passed by that board alone, referring
to the market committee the portion of the mayor's message
relating to markets.

This committee, after procuring the plans, reported the
same to the board of aldermen, which body finally adopted
a resolution authorizing the building of the market according
to the plans of the plaintiff, and adopting the plans, after
the commissioner of repairs had advertised for estimates for
rebuilding the market. In pursuance of such resolution he
reported the same to the board of aldermen, and thereupon a
resolution was passed by both boards, awarding the contract
to one Corlies, and adopting the plans of the plaintiff.

This resolution was vetoed by the mayor, and on the 30th
December the same was again passed by the Common Council
notwithstanding such veto. For reasons which did not
appear on the trial, the building was never erected, and this
action was brought to recover the value of the plaintiff's
services in preparing the plans, &c., for which the plaintiff
claimed a sum exceeding $9,000.

From the nature of the action, it is apparent that the lia-
bility of the defendants rests upon an employment, either
express or implied, by them or their lawful agents, or a sub
sequent ratification of such employment.

No such original employment by the defendants is attempted to be shown. It could not be, except by a resolution passed by both branches of the Common Council, expressly authorizing the work to be done; and the mere employment by members of a committee of one board without the concurrence of the other could never be construed to be the act of the defendants. Nor can it be said that such committee were the authorized agents of the defendants for this purpose. They had no such authority delegated to them. The subject referred to them did not necessarily involve any expenditure, and the resolution of reference gave the committee no authority to expend money or incur obligations on the part of the defendants. If, in executing their duties on such committee, expenditures of money became necessary, authority therefor should first have been obtained from the body for which it is contended such committee was acting.

There is no ground, therefore, upon which the defendants can be held liable as parties to such a contract, unless it can be implied, from the subsequent adoption of the plans by the Common Council, and the direction to erect the building in conformity therewith.

This implied liability can only be inferred from the adoption of the plans by the Common Council, after full knowledge of the claims made therefor, or upon the ground that such adoption was a ratification of the acts of the committee, and that by such ratification the defendants became liable to pay for the same.

It is not pretended that any knowledge was communicated to the Common Council that the plans, if used, were to be paid for by them, nor what claim, if any, would be made therefor. (*Roach* v. *Coe*, 1 E. D. Smith, 175.) Where no such information is given, it is as reasonable to suppose that the plans were offered in hopes of subsequent employment as an architect upon the building, as that they had been prepared under some private agreement with a committee, which was never communicated by that committee to the board.

But the main ground on which the motion to dismiss the complaint was granted, was of a different character. Even admitting that there were circumstances sufficient to warrant such implied contract in evidence on the trial, it was contended that the amended charter of the city deprived the Common Council, and, of course, any of its committees, of all power to do executive business. That contracts must be made by heads of the departments, and not by committees. That no moneys can be drawn from the treasury except upon previous appropriations, and that, as the act of the committee was unauthorized and contrary to law, it could not afterwards be ratified by the Common Council.

I am not prepared to say that there was any thing in the charter of 1849 which would have prohibited the defendants, by an express resolution, from employing the plaintiff to prepare these plans, without any advertisement for proposals, leaving, however, the contract to be signed by an appropriate head of department. The nature of the work, the skill necessary to a proper performance of it, and the still more important employment of superintendence which might follow the adoption of the plans, all call for the existence of such right of a choice as to the person to be employed therefor. Nor do I think that the provisions referred to are sufficient to take away from the Common Council such right. Many kinds of employment, in regard to the work to be done for the city, are of such a peculiar character as to render it impossible, with safety, to expose it to the lowest bidder. The case mentioned by Mr. Justice MITCHELL, in *Christopher* v. *The Mayor*, 13 Barb. S. C. R. 567, that of painting a portrait of the mayor or other distinguished individual, is strongly in point to show, that such work could not be let out to the lowest bidder, and so, also, is the present case one of a similar character. Unless the provisions of the charter were so clearly obligatory, in this respect, on the Common Council, I should hesitate before giving it such a construction. But it is not necessary for this case to decide this question.

In the case referred to, the proceedings under which this

liability was incurred were held to be void, upon the ground that they were taken upon a resolution passed by the board of aldermen alone, as well as on the ground that the Common Council could not make a contract except through a head of the department to which the business appropriately belonged.

Justice MITCHELL, in dissenting from the decision of that case, admits that the charter did prohibit all contracts not made by direct resolution of the Common Council.

Here the contract, if made at all, was made by a committee of one board, and that without any authority from either branch of the Common Council. Such contract was, in my judgment, entirely unauthorized and illegal, and comes within the prohibition referred to. If made by a committee authorized so to do by the Common Council, it would come within the description of contracts made by the authority of the Common Council, and in such case would be illegal, because not made by or through the head of department.

But it is said that the Common Council having, by adopting the plans, ratified the act of the committee, they became liable, although such act was illegal.

If such a doctrine can be sustained, the whole provisions of the charter on this subject will become nugatory. In every case they might allow committees to make contracts, and if by the subsequent ratification of such contract it would become a valid one, the prohibition against making contracts, except by the heads of the departments, would be a nullity. But there can be no ratification of a void and illegal act. If it had been authorized, the contract of the committee would have been illegal. A subsequent ratification of it would not add to its validity, when express authority, previously given, would not sustain it.

Such is the rule in regard to a contract executed by an agent under seal, when no written authority for such act existed; and a subsequent ratification of such contract will not bind the principal. (12 Wend. 525.)

The cases cited by the plaintiff's counsel are cases where the

contract was ratified, with knowledge of the terms of the contract at the time of ratification, and none of them relate to cases where a statute prohibited the contract from being made in the mode adopted by the parties.

The case appears to be a hard one for the plaintiff; and if the plans and specifications were prepared by him for the committee, under a promise that he should be paid for them, and not solely on the expectation of being employed to superintend the building, it would be equitable that he should be paid for the services so rendered, but the obstacles in the way of recovery in an action for such services appear to me to be insurmountable.

Judgment of nonsuit affirmed.